UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

OMAY FORD,
      Petitioner,


      V.                                    CIVIL ACTION NO.
                                            05-10431-JLT

UNITED STATES OF AMERICA,
      Respondent.


**REPORT AND RECOMMENDATION RE:
PETITIONER'S MOTION UNDER 28 U.S.C. § 2255
(Docket Entry # 1)**

**September 26, 2005**

**BOWLER, U.S.M.J.**

Pending before this court is a motion to vacate, set aside, and or correct a sentence pursuant to 28 U.S.C. § 2255 ("section 2255") filed by petitioner Omay Ford ("petitioner" or "Ford"). (Docket Entry # 1).  On August 18, 2005, the government filed a response to petitioner's motion to vacate.  (Docket Entry # 5). Thereafter, the district judge referred the matter to this court for a report and recommendation.

The motion alleges two grounds as a basis for vacating the sentence.  First, petitioner claims that he received ineffective assistance of counsel at the sentencing hearing.  Specifically, he claims his attorney failed to correctly argue his criminal

history and failed to file proper objections to the presentence
report.  Second, he avers that he is entitled to relief in light
of the Supreme Court's decision in <u>United States v. Booker</u>, __
U.S. __, 125 S.Ct. 738 (2005).  Petitioner also requests that the
court hold his motion in abeyance for any future claims that may
accrue.

An evidentiary hearing is not required to resolve
petitioner's claims.  As discussed below, even accepting
petitioner's nonconclusory statements of facts as true to the
extent not contradicted by the record, petitioner is not entitled
to relief.  <u>See</u> <u>David v. United States</u>, 134 F.3d 470, 477 (1st
Cir. 1998) (setting forth evidentiary hearing standard in section
2255 proceeding); <u>United States v. McGill</u>, 11 F.3d 223, 225 (1st
Cir. 1993) (stating "court need not give weight to conclusory
allegations"); <u>Myatt v. United States</u>, 875 F.2d 8, 11 (1st Cir.
1989) (hearing not necessary if section 2255 motion "is
conclusively refuted as to the alleged facts by the files and
records of the case").  Petitioner fails in his burden to
establish the need for an evidentiary hearing.  <u>See</u> <u>United States
v. McGill</u>, 11 F.3d at 225 (recognizing the petitioner bears
burden of establishing need for evidentiary hearing in section
2255 proceeding).  The motion (Docket Entry # 1) is therefore

ripe for review.

BACKGROUND

On January 24, 2002, Ford pled guilty to conspiring to distribute cocaine base in violation of 21 U.S.C. § 846 and distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1).  The offenses in the Indictment stemmed from a drug transaction on July 12, 2001, when police observed Ford hand a package containing 347.7 grams of crack cocaine to his co-defendant Curtis Strickland ("Strickland").

The guilty plea was obtained pursuant to a written plea and cooperation agreement with the government.[1]  The plea agreement specifically stated that both crimes involved 50 or more grams of crack cocaine, that the ten year mandatory minimum sentence set forth in 21 U.S.C. § 841(b)(1)(A)(iii) applied, and that Ford faced a maximum term of imprisonment of life, a fine of up to $4,000,000, at least five years of supervised release and a mandatory $200 special assessment.  In signing the plea agreement, Ford acknowledged that he fully understood the terms of the agreement and that he was satisfied with his legal representation.

---

[1]  A copy of the plea agreement is attached to the presentence report.

The presentence report ("PSR") determined that for the purposes of sentencing Ford should be held responsible for 734.4 grams of crack cocaine.  This amount consisted of not only the 347.7 grams that police observed him hand to Strickland on July 12, 2001, but an additional 386.7 grams, which Strickland informed police that he had received in prior transactions with Ford.  Taking into account Ford's criminal history, the PSR classified Ford as a career offender.[2]  Factoring in the amount of drugs involved, Ford's status as a career offender, and his acceptance of responsibility for his crimes, the PSR determined his adjusted offense level ("AOL") to be 34 which resulted in a guideline sentencing range ("GSR") of 262 to 327 months imprisonment.

Ford was represented by the same attorney ("counsel") throughout the criminal case and at the sentencing hearing. Prior to the sentencing hearing, counsel filed objections to the PSR, a sentencing memorandum and a motion for downward departure. Counsel argued, among other things, that Ford should not be responsible for any amount of cocaine other than the July transaction and that he should not be considered a career

_____

[2]  This determination was made based on three of Ford's prior convictions:  (1) manufacturing a controlled substance in 1994; (2) distribution of cocaine in 1995; and (3) assault and battery by means of a dangerous weapon in 2000.

4

criminal.  Those two points were also the central topics argued
before the district judge during the sentencing hearing.  Counsel
made the argument that Ford's prior drug convictions reflect the
history of someone with a substance abuse problem and not a
career criminal.  Counsel argued further that the drug
transactions before the July arrest should not be considered
until it is determined that Ford acted in a joint criminal
activity and that it was reasonably foreseeable to him that those
previous buys were in furtherance of the joint criminal activity.

The record reflects counsel's success on these issues as
counsel persuaded the district judge to remove the career
criminal status and only consider the amount of cocaine seized in
the July transaction.  This resulted in an AOL of 31 and a GSR of
188 to 235 months imprisonment.  Factoring in the government's
recommendation of a 30% reduction on the grounds of substantial
assistance, the district judge arrived at final sentence of 120
months.  Additionally, counsel brought the sentencing
recommendation of the DEA agent of "five to ten years" in this
case to the district judge's attention, to which he gave
consideration.[3]  Counsel continued to ask the court to depart

---

[3]  The DEA agent stated that his recommendation to the
government for sentencing was "five to ten years.  Not more than
ten years."  (Docket Entry # 5, Ex. B).

further from the guidelines until the sentence was given.

On April 24, 2002, Ford was sentenced to 120 months imprisonment, five years of supervised release and a $200 special assessment. Thereafter, Ford appealed to the First Circuit. On March 5, 2004, the First Circuit affirmed the conviction and summarily rejected Ford's claim of ineffective assistance.[4] On March 8, 2004, petitioner filed this section 2255 motion.[5]

DISCUSSION

I. Section 2255 Review

Section 2255 "provides for post-conviction relief in four instances, namely, if the petitioner's sentence (1) was imposed

---

[4] The First Circuit summarily affirmed the conviction stating that:

> Ford's ineffective assistance of counsel claim also fails. The record disproves his claim that counsel failed to "adequately apprize" him of the fact that he would be held responsible for the quantity of drugs which he sold while under government surveillance. His indictment, his plea agreement, and his own admission at sentencing all indicated his responsibility for 347.7 grams of cocaine base.

(Docket Entry # 75, Cr.No. 01-10351).

[5] While the motion was filed on March 8, 2004, petitioner placed it in the prison legal mailbox on March 4, 2004, thus bringing it within the one year statutory filing time. See Morales-Rivera v. United States, 184 F.3d 109, 111 (1st Cir. 1999).

in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." David v. United States, 134 F.3d 470, 474 (1st Cir. 1998) (citing Hill v. United States, 368 U.S. 424, 426-427 (1962)).  The fourth category "includes only assignments of error that reveal 'fundamental defects' which, if uncorrected, will 'result in a complete miscarriage of justice,' or irregularities that are 'inconsistent with the rudimentary demands of fair procedure.'" David v. United States, 134 F.3d at 474 (internal brackets omitted).  Stated otherwise, "apart from claims of constitutional or jurisdictional nature, a cognizable section 2255 claim must reveal 'exceptional circumstances' that make the need for redress evident." David v. United States, 134 F.3d at 474.  The petitioner bears the burden of establishing the need for section 2255 relief.  David v. United States, 134 F.3d at 474.


II.  Claim of Ineffective Counsel

     In the case at bar, petitioner fails to set forth a constitutional violation or otherwise demonstrate exceptional circumstances justifying section 2255 relief.  Petitioner claims that counsel "did not argue my criminal history correctly, and

7

did not file proper objections to the PSR."  (Docket Entry # 1).

The well established test set forth in Strickland v. Washington, 466 U.S. 668 (1984), governs Sixth Amendment ineffective assistance of counsel claims.  To succeed under Strickland, the petitioner must demonstrate that his attorney's performance was constitutionally deficient and concomitant prejudice.  United States v. McGill, 11 F.3d 223, 226 (1st Cir. 1993) (ineffective assistance of counsel claim in section 2255 proceeding); accord Phoenix v. Matesanz, 233 F.3d 77, 81 (1st Cir. 2000) (quoting Williams v. Taylor, 529 U.S. 362, 390 (2000)).  An attorney's performance is deficient where it is "so inferior as to be objectively unreasonable."  United States v. McGill, 11 F.3d at 226.  Moreover, "'Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" Lopez-Nieves v. United States, 917 F.2d 645, 649 (1st Cir. 1990) (quoting Strickland v. Washington, 466 U.S. at 690).

Under the deficient performance prong, an attorney renders ineffective assistance where he fails to "raise an important, obvious defense without any imaginable strategic or tactical reasons for the omission."  Prou v. United States, 199 F.3d 37, 48 (1st Cir. 1999) (failure of attorney to raise government's

untimely filing of information seeking sentence enhancement was
deficient inasmuch as the claim "was a clear winner and
presenting it would have risked nothing").  For example, where a
petitioner's attorney failed to argue for a downward departure
due to a medical condition under U.S.S.G. § 5H1.4 ("section
5H1.4"), the court in United States v. Espinoza-Godinez, 11
F.Supp.2d 1210, 1217 (D.Or. 1998), denied section 2255 relief in
part because the petitioner's physical condition was not
sufficiently extraordinary under section 5H1.4.

Defense counsel in this case was far from deficient.
Petitioner does not state any specific allegations of
misrepresenting his criminal history, nor does a review of the
record indicate that any material misrepresentations were made.
Before the district judge, counsel did not overstate petitioner's
criminal history.  To the contrary, counsel downplayed it as a
typical history of someone with a substance abuse problem.  In
fact, counsel was able to convince the district judge to not
characterize Ford's criminal history as that of a "career
criminal" despite having three qualifying felony convictions.

Petitioner also fails to identify any specific issues in
regards to the objections filed to the PSR.  A review of the PSR
reveals that no "important" and "obvious" defenses or arguments

9

were omitted, without reason, from counsel's objections.  <u>See</u>
<u>Prou v. United States</u>, 199 F.3d at 48.  Counsel's two principal
objections were ultimately sustained as the district judge did
not include any past drug transactions in the sentence and did
not deem Ford a career criminal.  Counsel also succeeded in
getting the favorable testimony of the DEA agent before the
district judge and made a point of identifying Ford's post-arrest
cooperation with law enforcement which served as the basis for an
additional 30% sentence reduction.  Counsel's advocacy, to a
great extent, resulted in a reduction in the sentence from a
possible maximum of 327 months to 120 months.

Under the prejudice prong, it is incumbent on petitioner to
demonstrate "'a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have
been different.  A reasonable probability is a probability
sufficient to undermine confidence in the outcome.'"  <u>Phoenix v.</u>
<u>Matesanz</u>, 233 F.3d at 81 (quoting <u>Williams v. Taylor</u>, 529 U.S. at
390).  For instance, in the context of a section 2255 allegation
that the petitioner's attorney failed to argue for a downward
departure under U.S.S.G. § 4A1.3, the First Circuit in <u>United</u>
<u>States v. Hoyle</u>, 237 F.3d 1, 8 (1ˢᵗ Cir. 2001), noted the lack of
any basis under <u>Strickland</u> "for believing that the result would

10

have been different if a downward departure had been sought"
inasmuch as "nothing yet put before us shows that a departure
motion had any promise."

Similarly, petitioner fails to demonstrate prejudice.
Assuming that counsel made some error or omission, there is
nothing in the record to suggest that there is any probability
that the outcome would have been different.  The recommendation
of the PSR was 262 to 327 months.  After the court heard
counsel's objections, the statutory minimum sentence for the
offense was reduced to 188 months.  The government's motion for a
30% downward departure brought the figure to 131.6 months.  The
district judge settled on a figure of 120 months, due in part to
the recommendation of the DEA agent offered by counsel.  Counsel
continued to argue for a greater departure until the sentence was
given.

In sum, petitioner fails to meet his burden to show both
defective performance and prejudice with respect to the two
alleged deficiencies of defense counsel.  Section 2255 relief is
therefore not available due to a violation of the Sixth
Amendment.

III.  <u>Claim of Relief under Booker</u>

Ford claims that he is entitled to relief under <u>Booker</u> because he was subjected to a "harsher standard of sentencing" and because there are certain factors "that the Court may now consider that were forbidden under the mandatory guidelines." (Docket Entry # 1).

Ford does not have a cognizable claim under <u>Booker</u>. Petitioner has not identified any factors which the court may now consider, which were previously forbidden.  Nor has he identified how the result would be any different if the court had considered those factors.  The Supreme Court in <u>Booker</u> held that the Sixth Amendment requirement of a jury trial applies to the sentencing phase of a criminal proceeding.  <u>United States v. Booker</u>, 125 S.Ct. at 746.  By applying the Sixth Amendment to the sentencing phase of a trial the Federal Sentencing Guidelines became effectively advisory rather than mandatory.  <u>United States v. Booker</u>, 125 S.Ct. at 767 ("The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing.").  That fact does not give rise to a claim of relief in this case.  The sentencing guidelines remain "a central consideration in sentencing." <u>Cirilo-Munoz v. United States</u>, 404 F.3d 527, 533 (1st Cir. 2005).

12

The district judge was certainly within his discretion to use the guidelines as a starting point in determining Ford's sentence. Furthermore, the district judge sentenced Ford well below the statutory minimum, which gives little credibility to Ford's claim that he was subject to a harsher standard.

Alternatively, the <u>Booker</u> decision cannot be applied retroactively.[6] <u>Cirilo-Munoz v. United States</u>, 404 F.3d at 533. While the Supreme Court in <u>Booker</u> did not state that <u>Booker</u> could not be applied retroactively, it gave no indication that a retroactive effect was intended. <u>Cirilo-Munoz v. United States</u>, 404 F.3d at 533. The First Circuit criticized the notion of applying <u>Booker</u> retroactively because it would unnecessarily compromise thousands of sentences. <u>Cirilo-Munoz v. United States</u>, 404 F.3d at 533. Only in very limited circumstances do new rules apply to convictions that have become final. <u>Cirilo-Munoz v. United States</u>, 404 F.3d at 532 (citing <u>Schriro v. Sumerlin</u>, __ U.S. __, 124 S.Ct. 2519, 2522 (2004)). "These exceptions include rules that 'prohibit criminal punishment for certain types of primary conduct,' and those that 'forbid the imposition of certain categories of punishment for particular classes of defendants.'" <u>Cirilo-Munoz v. United States</u>, 404 F.3d

---

[6] <u>Booker</u> was decided in January 2005. Ford was sentenced in 2002 and the First Circuit affirmed the conviction in March 2004.

at 532 (quoting <u>Sepulveda v. United States</u>, 330 F.3d 55, 59 (1st

Cir. 2003)).  Neither exception applies to this case.


IV.  <u>Petitioner's Request to Hold Motion in Abeyance For Future</u>

<u>Claims</u>

        This request also lacks merit.  Holding petitioner's motion

in abeyance in order to allow future, uncontemplated claims

stands in stark opposition to the statutory requirements of

section 2255.  Congress has set forth that a section 2255

petitioner has one year from the finality of his case to file a

petition for review.  28 U.S.C. § 2255(1)-(4).  A petitioner may

file a subsequent motion, subject to the restrictions of section

2244, with the permission of the court of appeals.  28 U.S.C. §

2255; 28 U.S.C. § 2244.  These filing limitations serve an

important purpose in promoting the finality of criminal

convictions.

        Furthermore, petitioner's reliance on <u>Bracket v. United</u>

<u>States</u>, 270 F.3d 60 (1st Cir. 2001), is misplaced.  The court in

<u>Bracket</u> held that, in the context of a defendant convicted as a

career offender, the one year limitations period should start

from the date when the defendant learned or should have learned

the facts supporting his claim to vacate the prior convictions.

<u>Bracket v. United States</u>, 270 F.3d at 68.  Ford, however, was not sentenced as a career offender.


<u>CONCLUSION</u>

In accordance with the foregoing discussion, this court **RECOMMENDS**[7] that the instant section 2255 motion (Docket Entry # 1) be **DENIED**.


/s/  Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[7]  Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection.  Any party may respond to another party's objections within ten days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.  <u>United States v. Escoboza Vega</u>, 678 F.2d 376, 378-379 (1st Cir. 1982); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).